IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWIN F. VARGAS,  :  | No. 3:24-CV-0492 |
|      Plaintiff    : | |
|                                 : | (Judge Munley) |
|     v.                   : | |
| LIONEL PIERRE, *et al.*,  : | |
|      Defendants  : | |

## MEMORANDUM

Plaintiff Edwin F. Vargas initiated the above-captioned *pro se* action under 42 U.S.C. § 1983,[1] alleging constitutional violations by officials at Dauphin County Prison (DCP) in Harrisburg, Pennsylvania. The court will dismiss Vargas's complaint pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted but will provide leave to amend.

## I.   BACKGROUND

Vargas's complaint is brief and undeveloped. He asserts that he is in pretrial detention at DCP and that, in November and December 2023, various DCP officials violated his constitutional rights. (See Doc. 1 at 3, 6). He alleges that (1) his legal mail was "stolen" from him; (2) all writing materials and envelopes were confiscated, infringing his "access to the courts"; (3) he was

---

[1] Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002).

subjected to unconstitutional conditions of confinement for eleven days; and (4) religious materials are only available on electronic tablets and those tablets were confiscated from November 16 to December 19, 2023, thus infringing his First Amendment rights. (Id. at 6, 7).

Vargas sues five DCP officials: Deputy Warden Lionel Pierre, Custody Major Roger Lucas, Director of Unit Management Jill Cuffaro, Deputy Warden LaTonya Ray, and Correctional Officer Luis Rodriguez. (See id. at 1-3). He asserts that his mental health has been affected and he seeks "money damages." (See id. at 7). Vargas, however, fails to state a claim upon which relief may be granted, so the court will dismiss his complaint.

## II.    STANDARD OF REVIEW

Courts are statutorily obligated to review, "as soon as practicable," unrepresented prisoner complaints targeting governmental entities, officers, or employees. See 28 U.S.C. § 1915A(a). One basis for dismissal at the screening stage is if the complaint "fails to state a claim upon which relief may be granted[.]" Id. § 1915A(b)(1). This language closely tracks Federal Rule of Civil Procedure 12(b)(6). Accordingly, courts apply the same standard to screening a *pro se* prisoner complaint for sufficiency under Section 1915A(b)(1) as they utilize when resolving a motion to dismiss under Rule 12(b)(6). See Grayson v. Mayview State Hosp., 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); O'Brien v.

U.S. Fed. Gov't, 763 F. App'x 157, 159 & n.5 (3d Cir. 2019) (*per curiam*) (nonprecedential); cf. Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000).

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see Nami v. Fauver, 82 F.3d 63, 66 (3d Cir. 1996).  The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.  See Phillips v. County of Allegheny, 515 F.3d 224, 229 (3d Cir. 2008).  In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.  Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)).

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.  See Connelly v. Lane Const. Corp., 809 F.3d 780, 787 (3d Cir. 2016) (internal citations, quotation marks, and footnote omitted).  At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."  Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009) (alterations in

3

original)). Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded. Id. (quoting Iqbal, 556 U.S. at 679). Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief." Id. (quoting Iqbal, 556 U.S. at 679). Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 681.

Because Vargas proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted). This is particularly true when the *pro se* litigant, like Vargas, is incarcerated. See Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

### III. DISCUSSION

Before addressing the sufficiency of Vargas's complaint, the court must identify the claimed constitutional violations. See Albright v. Oliver, 510 U.S. 266, 271 (1994) ("The first step in any [Section 1983] claim is to identify the specific constitutional right allegedly infringed."); Graham v. Connor, 490 U.S. 386, 394 (1989) (explaining that analysis of a Section 1983 claim requires

"identifying the specific constitutional right allegedly infringed by the challenged" conduct).

Vargas, for his part, invokes the First, Eighth, and Fourteenth Amendments. (See Doc. 1 at 7). As best as the court can ascertain, Vargas's first and second claims regarding confiscation of legal mail and writing and mailing materials could implicate both a First and Fourteenth Amendment access-to-courts claim and a Fourteenth Amendment claim of deprivation of property without due process of law. His third ground for relief plainly sounds in Fourteenth Amendment[2] conditions of confinement. His fourth claim appears to implicate the Free Exercise Clause of the First Amendment. (See id. at 6, 7).

Vargas's Section 1983 claims are deficient for multiple reasons. The court will address the pleading deficiencies in turn.

### A.   Personal Involvement

It is well established that, in Section 1983 actions, liability cannot be "predicated solely on the operation of *respondeat superior*." Rode v.

---

[2] Although Vargas invokes the Eighth Amendment, he avers that he was a pretrial detainee (not a convicted prisoner) at the time of the alleged events, so his conditions-of-confinement claim implicates the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment's prohibition of cruel and unusual punishments. See Jacobs v. Cumberland Cnty., 8 F.4th 187, 193-94 (3d Cir. 2021); Thomas v. Cumberland Cnty., 749 F.3d 217, 223 n.4 (3d Cir. 2014); Hubbard v. Taylor, 399 F.3d 150, 164 (3d Cir. 2005) (Hubbard I); see also Paulino v. Burlington Cnty. Jail, 438 F. App'x 106 (3d Cir. 2011) (nonprecedential) (explaining that "sentenced prisoners are protected from punishment that is 'cruel and unusual,' while pretrial detainees are protected from any punishment" (citing Hubbard I, 399 F.3d at 166-67)).

5

Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); see also Ashcroft v. Iqbal, 556. U.S. 662, 676 (2009) (affirming same principle in Bivens context). Rather, a Section 1983 plaintiff must plausibly plead facts that demonstrate the defendant's "personal involvement in the alleged misconduct." Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020). Personal involvement can include direct wrongful conduct by a defendant, but it can also be demonstrated through evidence of "personal direction" or "actual knowledge and acquiescence"; however, such averments must be made with particularity. Id. (quoting Rode, 845 F.2d at 1207). Furthermore, it is equally settled that involvement in the post-incident grievance process alone does not give rise to Section 1983 liability. See id. (affirming dismissal of claims against prison officials for lack of personal involvement when officials' "only involvement" was "their review and denial of [plaintiff]'s grievance"); Lewis v. Wetzel, 153 F. Supp. 3d 678, 696-97 (M.D. Pa. 2015) (collecting cases); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (nonprecedential); Alexander v. Gennarini, 144 F. App'x 924, 925 (3d Cir. 2005) (nonprecedential) (explaining that prisoner's claims against certain defendants were "properly dismissed" because the allegations against them "merely assert their involvement in the post-incident grievance process").

Vargas's complaint is completely silent as to the alleged conduct of three of the five Defendants. In fact, with respect to every Defendant other than Deputy Warden Pierre and C.O. Rodriguez, their names appear only in the caption or defendant-identification section of the form complaint. (See Doc. 1 at 1-3). As it stands, it is impossible to determine the alleged unconstitutional action, if any, taken by any Defendant other than Pierre and Rodriguez. Accordingly, the court must dismiss all claims against all Defendants (except Pierre and Rodriguez) pursuant to 28 U.S.C. § 1915A(b)(1) for lack of personal involvement.

### B. First and Fourteenth Amendment Access to Courts

Under the First and Fourteenth Amendments to the United States Constitution, "prisoners retain a right of access to the courts." Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008) (citing Lewis v. Casey, 518 U.S. 343, 346 (1996)). Inmates, however, may only proceed on access-to-courts claims in two situations: "challenges (direct or collateral) to their sentences and conditions of confinement." Id. (citing Lewis, 518 U.S. at 354-55). To adequately plead an access-to-courts claim that is backward-looking in nature,[3] the prisoner must allege "(1) that they suffered an 'actual injury'—that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other

---

[3] There is also a category of access-to-courts claims that is forward-looking, in which plaintiffs allege that "systematic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time." Christopher v. Harbury, 536 U.S. 403, 413 (2002).

7

'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." Monroe, 536 F.3d at 205 (quoting Christopher, 536 U.S. at 415). The underlying claim must be described well enough to demonstrate that it is "more than hope," and the complaint must set out the "lost remedy." See Christopher, 536 U.S. at 416-17.

To the extent that Vargas attempts to assert an access-to-courts claim, he has not done so. Although he alleges that Pierre and Rodriguez "stole" his legal mail and that Pierre ordered the temporary confiscation of his writing and mailing materials, (see Doc. 1 at 6), Vargas has not pled that he suffered an actual injury, i.e., that he lost the chance to pursue a nonfrivolous underlying claim. Nor has Vargas plausibly alleged that he has no remedy other than a Section 1983 lawsuit. Vargas, in fact, provides no details whatsoever regarding the effect, if any, the alleged mail tampering had on his access to the courts. Because Vargas has not plausibly alleged any of the elements of an access-to-courts claim, this claim must be dismissed under Section 1915A(b)(1).

### C. Fourteenth Amendment Deprivation of Property

Vargas contends that DCP officials "stole" his legal mail, (Doc. 1 at 6), and he claims a violation of the Fourteenth Amendment with respect to "due process of law." (Id. at 7). As best as the court can discern, the only possible constitutional tort that Vargas could be asserting under the Fourteenth

8

Amendment is a claim of deprivation of property without due process of law. See Hudson v. Palmer, 468 U.S. 517 530, 533 (1984). This constitutional tort, however, has significantly limited application. Most acutely, such a due process claim is unavailable when "adequate state post-deprivation remedies are available." Id. at 533.

Vargas's complaint is silent as to whether adequate state post-deprivation remedies exist for the loss of his property, but the court notes that state tort law likely provides a remedy for his claim. See 42 PA. CONS. STAT. § 8522(a), (b)(3) (waiving state statutory sovereign immunity for negligent acts related to the "care, custody or control of personal property in the possession or control of Commonwealth parties"); Snead v. SPCA of Pa., 929 A.2d 1169, 1183 (Pa. Super. Ct. 2007) (explaining intentional tort of conversion); see also Cruz v. SCI-SMR Dietary Servs., 566 F. App'x 158, 160 (3d Cir. 2014) (nonprecedential) (noting that district court correctly dismissed Fourteenth Amendment due process property deprivation claim due to existence of state post-deprivation remedies). The United States Court of Appeals for the Third Circuit has also held that the prison grievance process constitutes an adequate post-deprivation remedy for loss-of-property claims, even if the plaintiff disagrees with the results. See Tillman v. Lebanon Cnty. Corr. Facility, 221 F.3d 410, 422 (3d Cir. 2000).

Accordingly, because adequate state post-deprivation remedies are available, any constitutional deprivation-of-property claim Vargas is asserting must be dismissed for failure to state a claim upon which relief may be granted. Dismissal of this claim will be with prejudice, as granting leave to amend would be futile. Vargas cannot replead this claim in a way that would avoid the existence of adequate state post-deprivation remedies. See Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000) ("'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." (citation omitted)); Centifanti v. Nix, 865 F.2d 1422, 1431 (3d Cir. 1989) ("[T]he district court may properly deny leave to amend where the amendment would not withstand a motion to dismiss.").

### D. Fourteenth Amendment Conditions of Confinement

When a pretrial detainee asserts a conditions-of-confinement claim, the Due Process Clause of the Fourteenth Amendment requires courts to consider "first, whether any legitimate purposes are served by the[] conditions, and second, whether the[] conditions are rationally related to these purposes." See Hubbard v. Taylor, 538 F.3d 229, 232 (3d Cir. 2008) (Hubbard II) (quoting Union Cnty Jail Inmates v. Di Buono, 713 F.2d 984, 992 (3d Cir. 1983)). If pretrial detainees are subjected to conditions that are not reasonably related to a legitimate governmental objective, an inference may be made that the purpose of

the prison official's action is punishment. Hope v. Warden York Cnty. Prison, 972 F.3d 310, 326 (3d Cir. 2020). Thus, "a particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose." Stevenson v. Carroll, 495 F.3d 62, 68 (3d Cir. 2007) (quoting Rapier v. Harris, 172 F.3d 999, 1005 (7th Cir. 1999)).

As the Third Circuit instructs, courts confronted with a Fourteenth Amendment conditions-of-confinement claim must "consider the totality of the circumstances of confinement." Hope, 972 F.3d at 326 (citing Hubbard I, 399 F.3d at 159-60). And, like an Eighth Amendment conditions-of-confinement claim asserted by a convicted prisoner, a Fourteenth Amendment conditions-of-confinement claim by a pretrial detainee requires a showing of deliberate indifference on the part of prison officials. Edwards v. Northampton Cnty., 663 F. App'x 132, 135 (3d Cir. 2016) (nonprecedential) (citing Colburn v. Upper Darby Twp., 946 F.2d 1017, 1024 (3d Cir. 1991)).

Vargas's Fourteenth Amendment conditions-of-confinement claim fails because he has not plausibly alleged deliberate indifference by any Defendant. Vargas has not alleged who was potentially responsible for the purported conditions, who had knowledge of the conditions and was deliberately indifferent

11

toward them, or whom he informed about the conditions and subsequently acted with deliberate indifference toward them. Without such fundamental allegations of deliberate indifference by any Defendant, dismissal of this claim is required under Section 1915A(b)(1). See Edwards, 663 F. App'x at 135-36.

### E.  First Amendment Free Exercise Claim

"Inmates clearly retain protections afforded by the First Amendment, . . . including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Shabazz, 482 U.S. 342, 348 (1987) (citations omitted). "Nevertheless, the fact of incarceration and the valid penological objectives of deterrence of crime, rehabilitation of prisoners, and institutional security justify limitations on the exercise of constitutional rights by inmates." DeHart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000). Only beliefs which are (1) sincerely held, and (2) religious in nature are entitled to constitutional protection. See Wisconsin v. Yoder, 406 U.S. 205, 215-19 (1972); DeHart, 227 F.3d at 51.

Once a prisoner-plaintiff has established that they have a sincerely held religious belief, they must demonstrate that the challenged prison practice or policy (which allegedly infringes on that religious belief) is not reasonably related to penological interests under the factors set forth in Turner v. Safley, 482 U.S. 78 (1987). See DeHart, 227 F.3d at 51. The Turner v. Safley analysis aims to

balance the constitutional rights of prisoners with the "security, rehabilitation, and administrative concerns" of prisons. See id.

Vargas's complaint fails at all elements. First, he has not plausibly alleged that he holds a sincere religious belief. Second, he has not alleged that a prison practice or policy impermissibly infringed on that religious belief. It seems that Vargas is asserting that the policy at issue was DCP's confiscation of the electronic tablets for approximately one month. However, he has not alleged that this confiscation was not reasonably related to legitimate penological interests. Accordingly, Vargas's free exercise claim must be dismissed for failure to state a claim as well.

### F. Leave to Amend

Generally, "plaintiffs who file complaints subject to dismissal under [the Prison Litigation Reform Act of 1995] should receive leave to amend unless amendment would be inequitable or futile." Grayson, 293 F.3d at 114. The court will grant Vargas limited leave to amend.

Notably, unless Vargas is contending that Deputy Warden Pierre is responsible for all the aforementioned constitutional violations, it appears that he is attempting to bring multiple, unrelated lawsuits against diverse defendants in a single complaint. This he cannot do. The allegations that make up his various Section 1983 claims are not part of the "same transaction, occurrence, or series

of transactions or occurrences," nor does there appear to be a "question of law or fact common to all defendants" such that his claims and the named defendants could be permissively joined together in this action. See FED. R. CIV. P. 20(a)(2)(B). Because Vargas fails to specify what Defendant or Defendants were involved in his claims (other than Pierre and Rodriguez), it is impossible to determine whether the other targeted Defendants could be joined in this case under Rule 20.

Unless Vargas is targeting Pierre for every claim, he is free to file additional lawsuits based on these unrelated allegations, although the court notes that each unrelated claim against a different Defendant would likely require a separate Section 1983 lawsuit and Vargas would be required to pay the filing fee for each case. See id.; George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (explaining that "[u]nrelated claims against different defendants belong in different suits" not only to prevent confusion but also to ensure that prisoners pay the required filing fees under the PLRA); Redding v. Bilinski, No. 3:15-cv-1047, 2015 WL 3710842, at *1-2 (M.D. Pa. June 12, 2015) (same). However, because the Fourteenth Amendment deprivation-of-property claim is being dismissed with prejudice, Vargas cannot reassert that claim in a separate lawsuit.

If Vargas chooses to file an amended complaint in conformity with this Memorandum, it should be a stand-alone document, complete in itself and

without reference to any previous pleadings. The amended complaint should set forth Vargas's claims in short, concise, and plain statements, and in sequentially numbered paragraphs. Most notably, Vargas must clearly set forth the personal involvement of each Defendant in the alleged constitutional violation or violations. That is, he must plausibly plead the unconstitutional action (or inaction) of each Defendant he is attempting to sue, and he must appropriately delineate between Defendants.

Vargas must also sign the amended complaint and indicate the nature of the relief sought. He *may not* include unrelated claims against different Defendants in violation of Federal Rule of Civil Procedure 20(a)(2).

If Vargas files an amended complaint that disregards the foregoing guidance, that filing will be stricken from the record. If he does not timely file an appropriate amended pleading, dismissal of his complaint will automatically convert to dismissal with prejudice and the court will close this case.

## IV. CONCLUSION

Based on the foregoing, the Court will dismiss Vargas's complaint pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted. Limited leave to amend will be granted. An appropriate Order follows.

Date: 4/29/24                                    BY THE COURT:

```
```

_____
**JUDGE JULIA K. MUNLEY**
**United States District Court**