## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EDWIN F. VARGAS,** | : | **No. 3:24-CV-0492** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **LIONEL PIERRE, *et al.*,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff Edwin F. Vargas initiated the above-captioned *pro se* action under 42 U.S.C. § 1983,[1] alleging constitutional violations by officials at Dauphin County Prison (DCP) in Harrisburg, Pennsylvania.  The court dismissed Vargas's initial complaint pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.  Vargas was given leave to amend and has filed an amended complaint.  His amended complaint, however, fails to cure many of his pleading deficiencies and therefore will be dismissed as to all but one claim.

## I.  BACKGROUND

Vargas's amended complaint, like his original complaint, is brief and undeveloped.  He asserts that he is in pretrial detention at DCP and that, from

---

[1] Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials.  The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law.  See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002).

November to December 2023, several DCP officials violated his constitutional rights.  (See Doc. 1 at 4-5).  He alleges that (1) on December 2, 2023, Corrections Officer Luis Rodriguez—acting on orders from Deputy Warden Lionel Pierre—confiscated his legal mail, writing materials, and envelopes; (2) he was subjected to unconstitutional conditions of confinement for approximately two weeks while in the RHU; and (3) religious and legal materials are only available on electronic tablets and those tablets were confiscated from November 16 to December 19, 2023, thus infringing on his First Amendment rights.  (See id.).

Vargas sues three DCP officials: Deputy Warden Lionel Pierre, Corrections Officer Luis Rodriguez, and Corrections Officer Emmrich.  (See id. at 2-3).  He asserts that his mental health has been negatively affected but does not request any type of relief other than wanting to "speak in court."  (See id. at 5).

## II.   STANDARD OF REVIEW

Courts are statutorily obligated to review, "as soon as practicable," unrepresented prisoner complaints targeting governmental entities, officers, or employees.  See 28 U.S.C. § 1915A(a).  One basis for dismissal at the screening stage is if the complaint "fails to state a claim upon which relief may be granted[.]"  Id. § 1915A(b)(1).  This language closely tracks Federal Rule of Civil Procedure 12(b)(6).  Accordingly, courts apply the same standard to screening a pro se prisoner complaint for sufficiency under Section 1915A(b)(1) as they

utilize when resolving a motion to dismiss under Rule 12(b)(6). <u>See</u> <u>Grayson v.</u>

<u>Mayview State Hosp.</u>, 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); <u>O'Brien v.</u>

<u>U.S. Fed. Gov't</u>, 763 F. App'x 157, 159 & n.5 (3d Cir. 2019) (*per curiam*)

(nonprecedential); <u>cf.</u> <u>Allah v. Seiverling</u>, 229 F.3d 220, 223 (3d Cir. 2000).

　　　　In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire

"whether a plaintiff will ultimately prevail but whether the claimant is entitled to

offer evidence to support the claims." <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236

(1974); <u>see</u> <u>Nami v. Fauver</u>, 82 F.3d 63, 66 (3d Cir. 1996). The court must

accept as true the factual allegations in the complaint and draw all reasonable

inferences from them in the light most favorable to the plaintiff. <u>See</u> <u>Phillips v.</u>

<u>Cnty. of Allegheny</u>, 515 F.3d 224, 229 (3d Cir. 2008). In addition to the facts

alleged on the face of the complaint, the court may also consider "exhibits

attached to the complaint, matters of public record, as well as undisputedly

authentic documents" attached to a defendant's motion to dismiss if the plaintiff's

claims are based upon these documents. <u>Mayer v. Belichick</u>, 605 F.3d 223, 230

(3d Cir. 2010) (citing <u>Pension Benefit Guar. Corp. v. White Consol. Indus.</u>, 998

F.2d 1192, 1196 (3d Cir. 1993)).

　　　　When the sufficiency of a complaint is challenged, the court must conduct a

three-step inquiry. <u>See</u> <u>Connelly v. Lane Const. Corp.</u>, 809 F.3d 780, 787 (3d

Cir. 2016) (internal citations, quotation marks, and footnote omitted). At step

one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009) (alterations in original)). Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded. Id. (quoting Iqbal, 556 U.S. at 679). Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief." Id. (quoting Iqbal, 556 U.S. at 679). Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 681.

Because Vargas proceeds *pro se*, his pleadings are to be liberally construed and his amended complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted). This is particularly true when the *pro se* litigant, like Vargas, is incarcerated. See Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

## III.   DISCUSSION

Before addressing the sufficiency of Vargas's amended complaint, the court must identify the claimed constitutional violations. See Albright v. Oliver, 510 U.S. 266, 271 (1994) ("The first step in any [Section 1983] claim is to identify

the specific constitutional right allegedly infringed."); Graham v. Connor, 490 U.S. 386, 394 (1989) (explaining that analysis of a Section 1983 claim requires "identifying the specific constitutional right allegedly infringed by the challenged" conduct).

Vargas once again invokes the First, Eighth, and Fourteenth Amendments. (See Doc. 1 at 5). As best as the court can discern, Vargas's first claim regarding confiscation of legal mail and writing and mailing materials possibly implicates a First and Fourteenth Amendment access-to-courts violation. Although these allegations may also be intended to assert a Fourteenth Amendment claim of deprivation of property without due process of law, that claim was dismissed with prejudice in this court's prior Section 1915A screening. (See Doc. 7 at 8-10; Doc. 8 ¶ 6). Vargas's second claim plainly sounds in Fourteenth Amendment[2] conditions of confinement. His third claim appears to implicate the Free Exercise Clause of the First Amendment.

---

[2] Although Vargas invokes the Eighth Amendment, he avers that he was a pretrial detainee (not a convicted and sentenced prisoner) at the time of the alleged events, so his conditions-of-confinement claim implicates the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment's prohibition of cruel and unusual punishments. See Jacobs v. Cumberland Cnty., 8 F.4th 187, 193-94 (3d Cir. 2021); Thomas v. Cumberland Cnty., 749 F.3d 217, 223 n.4 (3d Cir. 2014); Hubbard v. Taylor, 399 F.3d 150, 164 (3d Cir. 2005) (Hubbard I); see also Paulino v. Burlington Cnty. Jail, 438 F. App'x 106 (3d Cir. 2011) (nonprecedential) (explaining that "sentenced prisoners are protected from punishment that is 'cruel and unusual,' while pretrial detainees are protected from any punishment" (citing Hubbard I, 399 F.3d at 166-67)).

Nearly all of Vargas's Section 1983 claims are deficient in some respect. The court will address the pleading deficiencies in turn.

## A.   First and Fourteenth Amendment Access to Courts

Under the First and Fourteenth Amendments to the United States Constitution, "prisoners retain a right of access to the courts." Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008) (citing Lewis v. Casey, 518 U.S. 343, 346 (1996)).  Inmates, however, may only proceed on access-to-courts claims in two situations: "challenges (direct or collateral) to their sentences and conditions of confinement." Id. (citing Lewis, 518 U.S. at 354-55).  To adequately plead an access-to-courts claim that is backward-looking in nature,[3] the prisoner must allege "(1) that they suffered an 'actual injury'—that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." Monroe, 536 F.3d at 205 (quoting Christopher, 536 U.S. at 415).  The underlying claim must be described well enough to demonstrate that it is "more than hope," and the complaint must set out the "lost remedy." See Christopher, 536 U.S. at 416-17.

---

[3] There is also a category of access-to-courts claims that is forward-looking, in which plaintiffs allege that "systematic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time." Christopher v. Harbury, 536 U.S. 403, 413 (2002).

Vargas's second attempt to state an access-to-courts claim fails on all fronts. Although he alleges that Pierre and Rodriguez confiscated his legal mail and his writing and mailing materials, (see Doc. 1 at 4), Vargas has not pled that he suffered an actual injury, *i.e.*, that he lost the chance to pursue a nonfrivolous underlying claim. Nor has Vargas plausibly alleged that he has no remedy other than a Section 1983 lawsuit. Vargas, in fact, provides no details whatsoever regarding the effect, if any, the alleged mail tampering had on his access to the courts. Because Vargas has not plausibly alleged any of the elements of an access-to-courts claim, this claim—to the extent it is asserted—again must be dismissed under Section 1915A(b)(1).

## B.   Fourteenth Amendment Conditions of Confinement

When a pretrial detainee asserts a conditions-of-confinement claim, the Due Process Clause of the Fourteenth Amendment requires courts to consider "first, whether any legitimate purposes are served by the[] conditions, and second, whether the[] conditions are rationally related to these purposes." See Hubbard v. Taylor, 538 F.3d 229, 232 (3d Cir. 2008) (Hubbard II) (quoting Union Cnty. Jail Inmates v. Di Buono, 713 F.2d 984, 992 (3d Cir. 1983)). If pretrial detainees are subjected to conditions that are not reasonably related to a legitimate governmental objective, an inference may be made that the purpose of the prison official's action is punishment. Hope v. Warden York Cnty. Prison, 972

F.3d 310, 326 (3d Cir. 2020). Thus, "a particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose." Stevenson v. Carroll, 495 F.3d 62, 68 (3d Cir. 2007) (quoting Rapier v. Harris, 172 F.3d 999, 1005 (7th Cir. 1999)).

As the Third Circuit instructs, courts confronted with a Fourteenth Amendment conditions-of-confinement claim must "consider the totality of the circumstances of confinement." Hope, 972 F.3d at 326 (citing Hubbard I, 399 F.3d at 159-60). And, like an Eighth Amendment conditions-of-confinement claim asserted by a convicted prisoner, a Fourteenth Amendment conditions-of-confinement claim by a pretrial detainee requires a showing of deliberate indifference on the part of prison officials. Edwards v. Northampton Cnty., 663 F. App'x 132, 135 (3d Cir. 2016) (nonprecedential) (citing Colburn v. Upper Darby Twp., 946 F.2d 1017, 1024 (3d Cir. 1991)).

Vargas alleges that, for approximately two weeks, there were "no lights" and "no water" in the RHU, and Corrections Officer Emmrich was "spitting in [his] food on cam[era]." (Doc. 1 at 4, 5). These allegations, taken as true, could amount to unlawful "punishment" for a pretrial detainee.

Vargas, however, has not alleged who was potentially responsible for the conditions involving the absence of light and water, or what Defendant (if any) knew about these conditions and was deliberately indifferent to them. Without such fundamental allegations of deliberate indifference, Vargas's conditions-of-confinement claim can only proceed against Emmrich.

## C.    First Amendment Free Exercise Claim

"Inmates clearly retain protections afforded by the First Amendment, . . . including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Shabazz, 482 U.S. 342, 348 (1987) (citations omitted). "Nevertheless, the fact of incarceration and the valid penological objectives of deterrence of crime, rehabilitation of prisoners, and institutional security justify limitations on the exercise of constitutional rights by inmates." DeHart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000). Only beliefs which are (1) sincerely held, and (2) religious in nature are entitled to constitutional protection. See Wisconsin v. Yoder, 406 U.S. 205, 215-19 (1972); DeHart, 227 F.3d at 51.

Once a prisoner-plaintiff has established that they have a sincerely held religious belief, they must demonstrate that the challenged prison practice or policy (which allegedly infringes on that religious belief) is not reasonably related to penological interests under the factors set forth in Turner v. Safley, 482 U.S. 78 (1987). See DeHart, 227 F.3d at 51. The Turner v. Safley analysis aims to

9

balance the constitutional rights of prisoners with the "security, rehabilitation, and administrative concerns" of prisons.  See id.

Vargas's amended complaint fails at all elements.  First, he has not plausibly alleged that he holds a sincere religious belief.  He states only that he was not able to "read the Bible" and letters from his family during the period when the electronic tablets were confiscated.  (See Doc. 1 at 5).  Second, he has not alleged that a prison practice or policy impermissibly infringed on his religious beliefs.  That is, he has not alleged that this electronic-tablet confiscation was not reasonably related to a legitimate penological interest and thus violated his free expression rights.  Accordingly, Vargas's free exercise claim once again must be dismissed for failure to state a claim.

### D.    Leave to Amend

Generally, "plaintiffs who file complaints subject to dismissal under [the Prison Litigation Reform Act of 1995] should receive leave to amend unless amendment would be inequitable or futile."  Grayson, 293 F.3d at 114.  Vargas's access-to-courts and free expression claims will be dismissed with prejudice. This court has clearly explained the elements of these claims and how Vargas's initial allegations were deficient, yet Vargas has failed to cure his pleading deficiencies even after "amendments previously allowed."  See Foman v. Davis, 371 U.S. 178, 182 (1962); Jones v. Unknown D.O.C. Bus Driver & Transp. Crew,

944 F.3d 478, 483 (3d Cir. 2019) (concluding that, where inmate plaintiff "has already had two chances to tell his story," providing "further leave to amend would be futile").

Out of an abundance of caution, the court will permit Vargas one final opportunity to amend his Fourteenth Amendment conditions-of-confinement claim to rectify the deficiencies noted above.  If Vargas chooses to file a second amended complaint, it should be a stand-alone document, complete in itself and without reference to any previous pleadings.  The second amended complaint should set forth his Fourteenth Amendment conditions-of-confinement claim in short, concise, and plain statements, and in sequentially numbered paragraphs. Most notably, Vargas must clearly set forth the personal involvement of each Defendant in the alleged constitutional violation.  That is, he must plausibly plead the unconstitutional action (or inaction) of each Defendant he is attempting to sue with respect to his conditions-of-confinement claim.

Vargas must also sign the second amended complaint and indicate the nature of the relief sought, as his amended complaint does not seek any type of relief.  Vargas *may not* include claims that have been dismissed with prejudice. Thus, he should focus on the Fourteenth Amendment conditions-of-confinement claim, as his other claims have been dismissed with prejudice.

11

If Vargas files a second amended complaint that disregards the foregoing guidance, that filing may be stricken from the record.  If he does not timely file an appropriate second amended pleading, this case will proceed only as to his Fourteenth Amendment conditions-of-confinement claim against Corrections Officer Emmrich.

## IV.   CONCLUSION

Based on the foregoing, the court will dismiss in part Vargas's amended complaint pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.  Limited leave to amend will be granted.  An appropriate Order follows.

Date: 7/9/24

BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court

12